IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PHYLLIS HAHN, | ) | CASE NO. 4:13 CV 973 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

**A.    Nature of the case and proceedings**

Before me[1] is an action by Phyllis Hahn under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 15. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 11.

[4] ECF # 12.

[5] ECF # 6.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

**B.   Background facts and decision of the Administrative Law Judge ("ALJ")**

Hahn, who was 50 years old at the time of the hearing,[11] is a high school graduate who attended two years of vocational school to become a licensed practical nurse ("LPN").[12] Her only prior past relevant work has been as an LPN.[13]

The ALJ, whose decision became the final decision of the Commissioner, found that Hahn had the following severe impairments: hearing loss, obesity, degenerative disc disease of the cervical and lumbar spine, posterior tibialis tendon dysfunction-left, degenerative joint disease of the left mid-foot, restless leg syndrome, depressive disorder-not otherwise specified and anxiety disorder.[14]

---

[6] ECF # 13.

[7] ECF # 24 (Commissioner's brief); ECF # 21 (Hahn's brief).

[8] ECF # 24-1 (Commissioner's charts); ECF # 21-1 (Hahn's charts).

[9] ECF # 20 (Hahn's fact sheet).

[10] ECF # 27.

[11] Transcript ("Tr.") at 117.

[12] *Id.* at 8.

[13] *Id.* at 26.

[14] *Id.* at 16-17.

-2-

After concluding that all the relevant impairments did not meet or equal a listing,[15] the ALJ made the following finding regarding Hahn's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant may stand and/or walk, with normal breaks for up to two hours of an eight hour workday and may sit, with normal breaks for up to six hours of an eight hour workday; the claimant may occasionally operate foot controls with the lower left extremity; the claimant may occasionally stoop, crouch, crawl, climb ramps and stairs, but may never climb ladders, ropes or scaffolds; the claimant may frequently reach, handle and perform fine or gross manipulation; the claimant is limited to the performance of work tasks that are simple, with limited production standards [defined as involving no production rate or pace], and is limited to occupations which do not require fine hearing capability, frequent verbal communication or frequent telephone communication.[16]

The ALJ decided that this residual functional capacity precluded Hahn from performing her past relevant work.[17]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Hahn could perform.[18] The ALJ, therefore, found Hahn not under a disability.[19]

---

[15] *Id.* at 17-19.

[16] *Id.* at 19.

[17] *Id.* at 26.

[18] *Id.* at 27.

[19] *Id.*

**C.      Issues for judicial review**

Hahn asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Hahn presents the following two issues for judicial review:

- Whether the ALJ's determination that Ms. Hahn can perform light work and frequently reach, handle, feel, and perform fine and gross manipulation is supported by substantial evidence.

- Whether substantial evidence supports the ALJ's finding that Ms. Hahn can sit with normal breaks up to six hours in an eight-hour day.[20]

**D.      Disposition**

For the reasons that follow, I will conclude that the ALJ's finding of no disability is in part supported by substantial evidence and in part not supported. Therefore, the decision will be affirmed in part and reversed in part, with the matter remanded for further proceedings.

## Analysis

**A.      Standards of review**

*1.      Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

---

[20] ECF # 21 at 1.

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[21]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[22] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[23]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

---

[21] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[22] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[23] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

## 2. *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[24]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[25]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[26] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[27]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[28] Although the treating

---

[24] 20 C.F.R. § 404.1527(d)(2).

[25] *Id.*

[26] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[27] *Id.*

[28] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[29] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[30] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[31]

In *Wilson v. Commissioner of Social Security*,[32] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[33] The court noted that the regulation expressly contains a "good reasons" requirement.[34] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

---

[29] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[30] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[31] *Id.* at 535.

[32] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[33] *Id.* at 544.

[34] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[35]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[36] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[37] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[38] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[39]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[40] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[41] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that

---

[35] *Id.* at 546.

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (2013).

[41] *Id.* at 375-76.

court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[42] *Blakley v. Commissioner of Social Security*,[43] and *Hensley v. Astrue*.[44]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[45] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[46] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6) and §§ 416.927(d)(2)(i)-(ii), (3)-(6).[47] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[48]

---

[42] *Rogers*, 486 F.3d at 242.

[43] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[44] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[45] *Gayheart*, 710 F.3d at 376.

[46] *Id.*

[47] *Id.*

[48] *Rogers*, 486 F.3d at 242.

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[49] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[50] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[51] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[52] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[53]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[54]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should

---

[49] *Gayheart*, 710 F.3d at 376.

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Id.*

-10-

receive controlling weight.[55] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[56] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[57] or that objective medical evidence does not support that opinion.[58]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[59] The Commissioner's *post hoc* arguments on judicial review are immaterial.[60]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment.

---

[55] *Rogers*, 486 F.3d 234 at 242.

[56] *Blakley*, 581 F.3d at 406-07.

[57] *Hensley*, 573 F.3d at 266-67.

[58] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[59] *Blakley*, 581 F.3d at 407.

[60] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[61]

- the rejection or discounting of the weight of a treating source without assigning weight,[62]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[63]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[64]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[65] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[66]

---

[61] *Blakley*, 581 F.3d at 407-08.

[62] *Id.* at 408.

[63] *Id.*

[64] *Id.* at 409.

[65] *Hensley*, 573 F.3d at 266-67.

[66] *Friend*, 375 F. App'x at 551-52.

The Sixth Circuit in *Blakley*[67] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[68] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[69]

In *Cole v. Astrue*,[70] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[71]

**B.    Application of standards**

*1.    The RFC finding on gross and fine manipulation is not supported by substantial evidence.*

This case centers on whether the ALJ properly handled the opinions of Hahn's treating physician, Mark Lewis, D.O. In the main, the critical points in Dr. Lewis's opinions

---

[67] *Blakley*, 581 F.3d 399.

[68] *Id.* at 409-10.

[69] *Id.* at 410.

[70] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[71] *Id.* at 940.

are that Hahn can only sit for four hours at a time in an eight-hour workday, and that Hahn has the ability to only occasionally engage in fine and gross manipulation.[72] Contrary to these opinions, the ALJ adopted an RFC where Hahn is able to sit for six hours and is capable of frequent fine and gross manipulation,[73] which is the opinion of Elizabeth Das, M.D., a state agency reviewing physician.[74]

In essence, Hahn contends that the greater limitation on sitting which Dr. Lewis stated is supported by the evidence showing degenerative disc disease in her lumbar spine, and the restrictions on her gross and fine manipulation is grounded on her degenerative disc disease in her cervical spine.[75] She argues that Dr. Lewis's opinions are consistent with two lumbar MRIs conducted in 2009 and 2010, with a cervical x-ray of December 2011, and a cervical MRI of February 2011.[76] She further maintains that the ALJ should have considered the test results obtained by other physicians, which are also supportive, she contends, with Dr. Lewis's opinions.[77]

---

[72] Tr. at 480-81.

[73] *Id.* at 19.

[74] *Id.* at 420-21.

[75] *See*, ECF # 21 at 15-16.

[76] *Id.* at 15 n.1.

[77] *Id.* at 16.

The ALJ extensively considers four functional opinions given by Dr. Lewis[78] as follows:

> The first and second, were rendered November 11, 2010 and December 7, 2010, respectively. These opinions indicated that the claimant could not bend, lift, squat, twist, or, for a prolonged period, stand, walk or sit. The third, rendered January 10, 2012 indicated that the claimant would be limited to sedentary exertion, could walk for two hours of an eight hour workday, could sit for four hours of an eight hour workday, could never climb, balance, stoop, crouch, kneel, crawl, push and/or pull, could occasionally reach, handle, feel, engage in fine and gross manipulation, could not be exposed to temperature extremes, pulmonary irritants, unprotected heights, dangerous moving machinery, would require extra rest periods and would require a sit or stand option at will. The fourth, rendered March 12, 2013 [sic], indicated that the claimant could lift no more than five pounds, could stand and/or walk for up to three hours of an eight hour workday and could sit for up to four hours of an eight hour workday, could occasionally stoop, could never climb, balance, kneel, crouch, crawl, could never push or pull, could occasionally reach, handle, and engage in fine and gross manipulation, could not be exposed to unprotected heights or dangerous moving machinery, could not be exposed to temperature extremes or noise, would require extra breaks and would require a sit or stand option.[79]

As noted, the critical step is the ALJ's comment that Dr. Lewis's opinions of January 1, 2012 and March 12, 2012 "differ [from the two opinions given in 2010] in the claimant's environmental limitations and exertional limitations without evidence of any change in the claimant's condition over that period."[80] That said, however, the ALJ further

---

[78] Tr. at 25. The first and second opinions were in late 2010 (November 11 and December 7), while the last two were in early 2012 (January 1 and March 12). [I note that the last opinion is incorrectly dated on the face of the document as March 12, 2013 (*id.* at 481), although it is clearly from that date in 2012, since the ALJ's opinion which references it is dated May 11, 2012.]

[79] *Id.*

[80] *Id.*

observes that the reason provided by Dr. Lewis for the change in functional limitations between November 2010 and January 2012 – objective studies in the record – is not a good reason in the mind of the ALJ.

Specifically, the ALJ provides three explanations for his conclusion that Dr. Lewis's reason is not a good reason:

1. MRI's in 2009 and 2010 "are virtually identical, and the cervical x-ray reports only mild changes, with no acute process[;]"

2. "it is difficult to comprehend that the objective studies [referred to by Dr. Lewis] would involve limitations designed for pulmonary impairments[;]" and

3. "it is apparent from the claimant's presentation at the hearing that she is currently functioning at a higher level than that at which Dr. Lewis suggested."[81]

On that basis, the ALJ assigned Dr. Lewis's two most recent functional limitation opinions "little weight,"[82] choosing instead to give "considerable weight" to the functional limitation opinion of the state agency medical consultant, Dr. Das.[83]

I observe initially, and the Commissioner agrees, that the analysis done by the ALJ does not strictly adhere to the two-step, sequential analysis set forth in *Gayheart*. The question for the Commissioner is whether the analysis that was done and particularly whether the reasons stated for discounting Dr. Lewis's opinion are sufficient.

---

[81] *Id.*

[82] *Id.*

[83] *Id.* at 24.

As to the lumbar spine, there is little doubt that the lumbar MRI done in November 2010[84] shows substantially similar findings to the one done in March 2009.[85] This is as the ALJ himself noted.[86] Moreover, because Dr. Das, the state reviewer, had the benefit of reviewing these MRI's in crafting her opinion, it is at least plausible that the ALJ articulated a sufficient reason for assigning greater weight to Dr. Das's opinion in this regard than to Dr. Lewis.

But, as to the cervical impairment, the evidence noted by Hahn, and particularly the MRI and cervical electromyogram showing cervical disc bulging and cervical radiculopathy,[87] was created after Dr. Das rendered her opinion. As such, the ALJ would need to have done more to articulate why Dr. Das's opinion as to fine and gross manipulation is entitled to more weight than the opinion of Dr. Lewis.

Based on the record as detailed above, I find that there is substantial evidence to support the RFC's finding that Hahn can sit for six hours in an eight-hour workday but not for the finding that she is capable of frequent gross and fine manipulation. Accordingly, the decision of the ALJ is affirmed in part and remanded for further proceedings consistent with this opinion as to the remaining issue.

---

[84] *Id.* at 371.

[85] *Id.* at 279.

[86] *Id.* at 25.

[87] *Id.* at 475, 478-79.

## Conclusion

For the reasons stated, substantial evidence supports in part and does not support in part the finding of the Commissioner that Hahn had no disability. Therefore, the denial of Hahn's applications is affirmed in part while the case is remanded for further proceedings consistent with this opinion as to the remaining issue.

IT IS SO ORDERED.


Dated: May 14, 2014                                         s/ William H. Baughman, Jr.
                                                            United States Magistrate Judge